**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

HILARIA AURORA QUINTANA CASILLAS,

Petitioner, Civ. 17-01039-DME-CBS

v

JEFFERSON BEAUREGARD SESSIONS III, U.S. Attorney General;
IVAN E. GARDZELEWSKI, Immigration Judge;
JOHN F. KELLY, Secretary of the Department of Homeland Security;
JEFFREY LYNCH, U.S. ICE Field Office Director for the Denver Field Office;
TRACEY CAMMORTO, Acting U.S. ICE Assistant Field Office Director for the Denver Field Office; and
JOHNNY CHOATE, Warden of the Denver ICE Contract Detention Facility,

Respondents.

---

RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

---

Magistrate Judge Craig B. Shaffer

Before the court is a verified petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by *pro bono* counsel on behalf of Petitioner Hilaria Aurora Quintana Casillas (“Petitioner”). Petitioner alleges that the Bureau of Immigrations and Custody Enforcement (“ICE”) is detaining her in violation of federal law.[1] Judge David M. Ebel referred the Petition to this court for a recommendation. Doc. 10. The court recommends denying the first cause of action for failure to state a claim and recommends dismissing the second cause of action without prejudice as premature, requiring Petitioner to first pursue review under 8 C.F.R. § 241.13.

[1] Petitioner alleges that she is in the physical custody of all Respondents and ICE, and is under the direct control of all Respondents. Doc. 1 at 2. Respondents do not argue, and the court does not reach, whether any of the Respondents are inappropriately named as parties. For simplicity, the court refers to Respondents collectively as the Government.

BACKGROUND

The following facts appear to be undisputed.

> Hilaria Aurora Quintana-Casillas (the applicant) is a fifty-five-year-old native and citizen of Mexico. The applicant was previously removed from the United States in 2002 to Mexico. She reentered the United States without inspection in December 2013 at El Paso, Texas. On June 2, 2016, the Department of Homeland Security (DHS or the Department) served the applicant with a Notice of Intent/Decision to Reinstate Prior Order. The applicant expressed a fear of returning to Mexico and was referred to an Asylum Officer (AO) for a reasonable fear interview. The applicant was interviewed on June 22, 2016. On June 23, 2016, the AO found that the applicant had not established a reasonable fear of persecution upon return to Mexico and referred her case to the Court by filing a Form I-863, Notice of Referral to the Immigration Judge (I-863). Exh. 1. The Court vacated the decision of the AO on July 20, 2016, and the applicant was placed in "withholding-only" proceedings.

Doc. 1-1 at 1 (*In re Quintana-Casillas,* File No. A# 090 321 665, Executive Office for Immigration Review, written decision of Alison R. Kane, Immigration Judge, Feb. 7, 2017).

> [Petitioner] became a lawful permanent resident of the United States in 1989. In 1997, Petitioner was convicted in New Mexico state court of possession of marijuana with intent to distribute and conspiracy to distribute marijuana. Petitioner lost her legal permanent resident status as a result of the removal proceedings initiated after this conviction and was removed to Mexico in June 1999. Petitioner illegally reentered the United States about a month later. In 2001, Petitioner was convicted in a Colorado state court for possession of cocaine with intent to distribute a controlled substance. Petitioner was sentenced to eight years of imprisonment, and the sentence was suspended after having credited her with 95 days for time served. Doc. 1-1 at 9. Petitioner was removed again to Mexico in 2002. Petitioner illegally reentered the United States in December 2013.

Doc. 14 (the Government's Response, citations to Declaration of Tracey Cammorto, Doc. 14-1 ¶¶ 3-6 omitted).

The immigration judge denied Petitioner's requests for withholding of removal, due to her criminal convictions, and granted her request for deferral of removal. Doc. 1-1 at 7-11. DHS appealed the deferral order to the Board of Immigration Appeals ("BIA"). Petitioner requested that an immigration judge hold an individualized bond hearing; on March 23, 2017, that request was denied for lack of jurisdiction to conduct a bond hearing in a "withholding only" proceeding. Doc. 1-3.

At some point after DHS filed its appeal with BIA, Petitioner requested that the Enforcement and Removal Operations ("ERO") department of ICE exercise "prosecutorial discretion." That request is reflected in in the email response of Tracey Cammorto, Acting Assistant Field Office Director, DHS/ICE/ERO/GEO:

> This response is to your request for ERO to exercise prosecutorial discretion in the case of your client, Quintana Casillas, Hilaria Aurora A090 321 665. DHS filed an appeal with the Board of Immigration Appeals (BIA) on March 8, 2017 which is currently pending, and there is no final order granting any form of protection. Ms. Quintana Casillas is subject to a final order of removal and is properly detained as her criminal history presents concerns for public safety. Your client is an aggravated felon with convictions for Controlled Substance Possession W/Intent to Distribute and sentenced to 8 years in Dept. of Corrections, suspended. She has another conviction for Felony Conspiracy and Felony Controlled Substance Distribution and was sentenced to 18 months imprisonment, suspended. Ms. Quintana Casillas' criminal history warrants continued detention as provided for in the memo from Michael J. Garcia, former Assistant Secretary, regarding the detention policy where an Immigration Judge has granted Asylum and ICE has appealed, dated February 9, 2004.
>
> Once there is a final decision on the appeal with the BIA, we will be able to address the custody concerns you have for your client.

Doc. 1-4 (Ex. D to Petition, email of Tracey Cammorto, dated March 27, 2017).

One month later, Petitioner filed her present habeas petition through *pro bono* counsel. Doc. 1. On May 10, 2017, the court found good cause to require the Respondents to show cause why the petition should not be granted. Doc. 12. Briefing was completed May 19, 2017.

On July 14, 2017, Petitioner filed a status update regarding the Government's appeal of the deferral order. Doc. 16. Petitioner's counsel states that upon calling the BIA on that date, he was informed that the appeal had been remanded to the immigration judge for further proceedings. *Id.* at 2. On July 18, 2017 Petitioner filed a copy of the BIA's July 13, 2017 order. Doc. 17-1. The BIA dismissed the Government's appeal and remanded to the immigration judge pursuant to 8 C.F.R. § 1003.1(d)(6) for "the purpose of allowing the Department of Homeland Security the opportunity to complete or update any identity, law enforcement, or security investigations or examinations, and further proceedings, if necessary, and for the entry of an order." *Id.* at 2. As far as the court is aware, Petitioner continues to be detained.

ANALYSIS

The court has jurisdiction to hear the Petition because Petitioner alleges that she "is in custody in violation of the Constitution, or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). *See also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"). Having reviewed the court's file including the Petition, Defendants' response (doc. 14) to the show cause order, and the Petitioner's reply (doc. 15) in support of her Petition, the court has determined that it can address the issues discussed in this recommendation without a hearing. 28 U.S.C. § 2243; *Sayed v. Trani*, No. 16-cv-00926-RBJ, 2017 WL 698799, at *1 (D. Colo. Feb. 21, 2017) (citing *Jeter v. Keohane*, 739 F.2d 257, n.1 (7th Cir. 1984) ("An

evidentiary hearing is not necessary when the facts essential to consideration of the constitutional issue are already before the court.”).

“Immigration law is distinguished by its complexity more than by its clarity.” *Garcia v. Sessions*, 856 F.3d 27, 30 (1st Cir. 2017). At least two statutes govern the detention of aliens who are present in the United States: 8 U.S.C. § 1226 and 8 U.S.C. § 1231. The former addresses arrest and detention of aliens “pending a decision on whether the alien is to be removed from the United States.” 8 U.S.C. § 1226(a). Section 1226 provides a bond hearing, except for certain “criminal aliens” whose detention (without a bond hearing or parole) is mandatory. 8 U.S.C. § 1226(a), (c)(1). Section 1231 addresses detention of aliens who have been “ordered removed,” requires detention during a 90 day removal period (measured from the date the removal order is “administratively final”), and expressly provides that detention beyond the 90 day period may be extended indefinitely for certain criminal aliens. 8 U.S.C. § 1231(a)(1)(A), (1)(B), (2), (6). This Petition asks the court to resolve which of these two statutes applies to Petitioner and then to hold that her continued detention violates her due process rights.

*A. Count I*

In her first claim, Petitioner alleges that 8 U.S.C. § 1226 governs her detention, subject to due process requirements, because while the Government’s appeal of the deferral order was pending, she awaited a “decision on whether [she] is to be removed” within the meaning of § 1226(a).[2] Petitioner admits that subsection (c) of the statute applies to her and thus her detention is mandatory without a right of bond hearing or parole. Doc. 1 at 6-7. She argues that § 1226(c) is nonetheless limited by constitutional due process rights, citing *Demore v. Kim*, 538 U.S. 510

[2] After the Government’s appeal was dismissed, Petitioner neither conceded her § 1226 argument nor expressly briefed how she believes it could still apply to the remaining proceedings on remand. Doc. 17. The court accordingly assumes that Petitioner still brings her first claim for relief under § 1226.

(2003). Specifically, Petitioner argues a right to an individualized bond hearing in front of an immigration judge after her detention became prolonged.

In *Demore,* the Court held § 1226(c) constitutional because aliens could "be detained for the brief period necessary for their removal proceedings," which was "roughly a month and a half in the vast majority of cases in which [§1226(c)] is invoked, and about five months in the minority of cases in which the alien chooses to appeal." 538 U.S. at 513, 530. For the same proposition, Petitioner also cites a pending case at the U.S. Supreme Court, *Jennings v. Rodriguez*, No. 15-1204, 136 S. Ct. 2489 (2016), and several circuit opinions outside the Tenth Circuit.[3] Petitioner alleges that her detention under § 1226(c) has become prolonged, that Respondents have therefore violated her due process rights by not granting her request for an individualized bond hearing, and requests that the court order the immigration judge to hold such a hearing.

However, Petitioner also recognizes that she is subject to a removal order that the Government reinstated pursuant to § 1231:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and *is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter,* and the alien shall be removed under the prior order at any time after the reentry.

[3] Petitioner cites *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1202 (11th Cir. 2016); *Reid v. Donelan*, 819 F.3d 486, 491–92 (1st Cir. 2016); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015); *Lora v. Shanahan*, 804 F.3d 601, 606–07 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2494 (2016); *Rodriguez v. Robbins*, 715 F.3d 1127, 1131–32 (9th Cir. 2013); *Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003). None of these cases appear to regard an alien who was subject to a reinstated removal order.

8 U.S.C. § 1231(a)(5) (emphasis added). Thus, Petitioner has been "ordered removed" within the meaning of 8 U.S.C. § 1231 and is barred from seeking reopening or review of the removal order.[4]

After she was detained in June 2016, Petitioner requested and ultimately obtained from the immigration judge deferral of the removal order. Doc. 1-1 (immigration judge's February 7, 2017 decision). She requested deferral pursuant to the following regulation:

> An alien who: has been ordered removed; has been found under § 1208.16(c)(3) to be entitled to protection under the Convention Against Torture; and is subject to the provisions for mandatory denial of withholding of removal under § 1208.16(d)(2) or (d)(3), shall be granted deferral of removal to the country where he or she is more likely than not to be tortured.

8 C.F.R. § 1208.17(a). The same regulation states that deferral

> [w]ill not necessarily result in the alien being released from the custody of the [Immigration and Naturalization] Service [now DHS] if the alien is subject to such custody[.] * * * *Nothing in this section shall alter the authority of the Service to detain an alien whose removal has been deferred* under this section and who is otherwise subject to detention. In the case of such an alien, decisions about the alien's release shall be made according to part 241 of this chapter.

8 C.F.R. § 1208.17(b)(1)(ii), (c) (emphasis added). Thus even assuming that the Government's appeal of the deferral order is unsuccessful, the regulation makes plain that deferral will not give Petitioner a right to be released.

Regulation § 1208.17 also makes plain that deferral will not alter how the "decisions about the alien's release shall be made;" those decisions shall be governed by the procedures in "part 241 of this chapter." In its Response, the Government notes that "part 241 of this chapter" effectively refers to 8 U.S.C. § 1231. Doc. 14 at 10. Although the Government could have

---

[4] It is undisputed that Petitioner has been ordered and actually removed to Mexico twice. The prior removal order was reinstated on June 2, 2016 Doc. 1 at 3; Cammorto Dec. ¶ 6.

connected the dots better, the court agrees. Read literally, "part 241 of this chapter" seemingly refers to a part 241 in 8 C.F.R. Chapter V, but there is no such part in that chapter. In a 2003 reorganization, Chapter V's regulations for the Executive Office of Immigration Review ("EOIR") was created by copying much of Chapter I, which became the Department of Homeland Security's regulations. *Aliens and Nationality; Homeland Security; Reorganization of Regulations; Final Rule;* 68 Fed. Reg. 9824 (DOJ Feb. 28, 2003). Regulation 1208.17 is thus best understood as referring to part 241 of Chapter I,[5] DHS's regulations implementing its "authority to continue an alien in custody or grant release or parole under sections 241(a)(6) … of the [Immigration and Nationality] Act ["INA"]." 8 C.F.R. § 241.4(a). The referenced § 241 of the INA is codified at 8 U.S.C. § 1231. Thus, 8 C.F.R. § 1208.17 reflects that 8 U.S.C. § 1231 – not § 1226 – governs Petitioner's detention while her removal is deferred.

Petitioner argues nonetheless that the Government's appeal of the deferral order (or the proceedings remaining on remand from that appeal) is a pending "decision on whether [she] is to be removed" within the meaning of § 1226(a). She argues that this causes her reinstated removal order to lack administrative finality and her detention to be governed by 8 U.S.C. § 1226(c). Petitioner relies primarily on *Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016), in which the court held that during "withholding only" proceedings, § 1226(a) governs the detention of an alien who is subject to a reinstated removal order. Secondarily, Petitioner relies on *Luna-Garcia v. Holder*, 777 F.3d 1182, 1183 (10th Cir. 2015) and other circuit cases that find "withholding only" proceedings cause removal orders to lack judicial finality. The Government disagrees, arguing that although the pending appeal may affect *judicial* finality of the reinstated removal order (under 8 U.S.C. § 1252), it does not affect that order's *administrative* finality. Thus the

---

[5] The result would be the same if 8 C.F.R. § 1208.17's reference to "part 241 in this chapter" regards the EOIR's regulations, because 8 C.F.R. § 1241.8 duplicates § 241.8.

Government argues that Petitioner's detention remains governed by 8 U.S.C. § 1231, citing *inter alia Reyes v. Lynch*, No. 15-cv-00442-MEH, 2015 WL 5081597 (D. Colo. Aug. 28, 2015).

In *Reyes*, Magistrate Judge Hegarty addressed a fact scenario similar to Petitioner's: an alien who was subject to a reinstated removal order, being detained while his "withholding only" proceeding was pending. The alien argued that his pending request for withholding caused § 1226 to govern his detention because it regarded "a decision on whether [he] is to be removed." Judge Hegarty rejected the argument, reasoning that although a pending withholding proceeding causes a removal order to lack finality for purposes of judicial review under 8 U.S.C. § 1252, the same is not true for the order's administrative finality under § 1231(a)(1)(B)(i). *Reyes*, 2015 WL 5081597, at *3.

> [T]he immigration agency has completed the decisionmaking process on whether the Petitioner has a legal right to remain in the United States and has determined that he does not have that right. What has yet to be determined is whether he can be returned to Mexico, or whether the government must look to another country to which Petitioner will be removed. … During the pendency of that determination, there is no compelling legal reason, for purposes of detention, to treat Petitioner as an alien who is "pending a decision on whether [he] is to be removed from the United States," 8 U.S.C. § 1226(a), as opposed to an alien who "is ordered removed." 8 U.S.C. § 1231(a)(1)(A). …

*Id.* at *4 (case citations omitted). Once an alien has been ordered removed, she no longer has the same rights under the immigration law.

> When an alien has not yet been ordered removed, as under Section 1226(a), he is, as noted above, fighting to establish eligibility to remain in the United States. An alien who has received an administratively final order of removal has lost that battle. … Indeed, if Petitioner is eligible for a bond hearing under Section 1226, then by illegally re-entering the United States once again, he has attained greater rights (in terms of potential freedom to avoid detention) than he had when he was last removed... I do not believe Congress intended such a result.

*Id.* (citations omitted). This is true regardless of whether the alien's removal is later withheld or deferred.

> Even … if Petitioner *succeeds* in his withholding-only case, his detention will still be governed by Section 1231(a)(5), because his status will be that of an alien with a final order of removal. … If Petitioner had a final order of removal (and was subject to detention under Section 1231) *prior to* expressing a fear of torture, and he will have a final order of removal (and will be subject to detention under Section 1231) *after* his withholding proceedings are completed (no matter what the outcome is), I cannot see how his detention status should change as a matter of law *during* his withholding proceedings. Such a transitory appearance of new rights *vis-a-vis* an alien's ability to obtain bond makes no legal sense.

*Reyes*, 2015 WL 5081597, at *4 (citations omitted, emphases original).

Since *Reyes*, it appears that a majority of courts likewise conclude that a pending withholding or deferral proceeding does not remove the administrative finality of a reinstated removal order, and thus § 1231 governs detention. *See, e.g.*, *Padilla-Ramirez v. Bible*, No. 16-35385, 2017 WL 2871513, at *4 (9th Cir. July 6, 2017) ("Because Padilla-Ramirez's reinstated removal order remains administratively final, he is detained pursuant to section 1231(a)"); *Bucio-Fernandez v. Sabol*, No. 1:17-cv-00195, 2017 WL 2619138, at *3 (M.D. Pa. June 16, 2017) (collecting several cases); *Crespin v. Evans*, No. 1:17-cv-140, 2017 WL 2385330, at *1 (E.D. Va. May 31, 2017), *appeal pending; Barrera-Romero v. Cole*, No. 1:16-cv-00148, 2016 WL 7041710, at *3–4 (W.D. La. Aug. 19, 2016), *rec. adopted*, 2016 WL 7041614 (W.D. La. Dec. 1, 2016).

In her reply, Petitioner points to 8 C.F.R. § 241.4, which provides that when a motion to reopen or review is granted § 236 of the INA (*i.e.*, 8 U.S.C. § 1226) governs the alien's detention. However, Petitioner did not file a motion to reopen or review. Nor could she, since 8 U.S.C. § 1231(a)(5) bars her from filing such motions. Nor does Petitioner address subsection

(c) of regulation § 241.4, which provides that part 241 (and hence 8 U.S.C. § 1231) governs the detention of alien who is granted deferral. 8 C.F.R § 241.4(c).

The court finds the reasoning of *Reyes* and *Padilla-Romero* persuasive, and for the same reasons stated therein finds the reasoning of *Guerra* unpersuasive. The immigration agency has already decided that Petitioner is removable. The agency's regulations reasonably interpret § 1231(a)(5) and (a)(6) such that deferral will not change any of Petitioner's rights with respect to detention. 8 C.F.R. § 1208.17(c); 8 C.F.R. § 241.4(c). *See, e.g., Padilla-Ramirez,* 2017 WL 2871513, at *7.[6] Although as *Guerra* notes, the withholding or deferral of a removal order affects the actual date that the Petitioner will be removed, it does not affect the reinstated removal order. Section 1226(a) cannot reasonably be read to take away administrative finality of the reinstated removal order.

In short, the Government's appeal regarding deferral did not affect the administrative finality of the reinstated removal order. Petitioner's detention is governed by 8 U.S.C. § 1231 and 8 C.F.R. part 241. Because § 1226 does not govern Petitioner's detention, the court recommends denying and dismissing Petitioner's first claim for relief.

*B. Count II*

In her second claim, Petitioner alleges in the alternative that 8 U.S.C. § 1231 governs her detention. Petitioner recognizes that under this statute, DHS has discretion to detain her "beyond the [90 day] removal period" under § 1231(a)(6) and is not required to refer Petitioner to an

[6] "It … is consonant with settled administrative legal principles to hold that Padilla-Ramirez's reinstated removal order … is final for detention purposes even though it lacks finality for purposes of judicial review of his withholding-only claim." *Padilla-Ramirez,* 2017 WL 2871513, at *7.

immigration for a bond hearing.[7] Petitioner focuses on *Zadvydas v. Davis,* 533 U.S. 678 (2001), the U.S. Supreme Court case holding that § 1231(a)(6) detention is subject to due process limits. In *Zadvydas*, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Id.* at 699. "In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699-700. The Court held that six months of detention under § 1231 is presumed reasonable. *Id.* at 701. "[A]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Detention beyond six months does not, by itself, mean that the alien must be released. *Id.* "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Importantly, *Zadvydas* noted the continued importance of the immigration agency's decision-making in this context. The habeas court's review "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.*

Less than six months after *Zadvydas* was decided, the Department of Justice issued interim rule changes in response. *Continued Detention of Aliens Subject to Final Orders of Removal*, 66 Fed. Reg. 56967-1 (DOJ Nov. 14, 2001). In January 2005, those rules became final

[7] Section 1231 provides for release upon bond in only one circumstance: when an alien's removal is stayed because her testimony is needed in a prosecution. 8 U.S.C. § 1231(c)(2)(A)(ii), (C). Petitioner does not argue that statute is applicable here.

without substantial change. *Execution of Removal Orders; Countries to Which Aliens May Be Removed*, 70 Fed. Reg. 661-02 (DOJ Jan. 5, 2005). In the new rules, the regulation providing periodic custody reviews by immigration officers (8 C.F.R. § 241.4(c)(1), (h), (k)) reflects that those procedures apply unless and until DHS "has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(3).

The agency's later, reasonable interpretation of an ambiguous statute is owed deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), even when the Supreme Court has given an earlier interpretation of the statute. *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005); *Hernandez–Carrera v. Carlson*, 547 F.3d 1237, 1246-47 (10th Cir. 2008) (holding that another regulation enacted in response to *Zadvydas*, 8 C.F.R. § 241.14, is "a subsequent, reasonable agency interpretation of an ambiguous statute [§ 1231], which avoids raising serious constitutional doubts, [and thus] is [entitled to] due deference notwithstanding the Supreme Court's earlier contrary interpretation of the statute").[8] The immigration agency can and does reasonably resolve § 1231's ambiguity regarding continued detention in 8 C.F.R. § 241.13.

Regulation 241.13 provides in relevant part that

> [t]his section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at [8 C.F.R.] § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.

---

[8] The court does not reach whether 8 C.F.R. § 241.13 interprets § 1231(a) in a manner contrary to *Zadvydas*.

8 C.F.R. § 241.13(a). In light of this court's conclusion that the Government's appeal of the deferral order did not affect the administrative finality of the reinstated removal order, that order was administratively final upon its issuance (June 2, 2016). The 90-day removal period has expired, and therefore as an alien who is "subject to a final order of removal," Petitioner is eligible for the special review procedures of regulation 241.13.

The procedures in 8 C.F.R. (§ 241.13(c)-(j) are quite detailed and acknowledge that

> detention of an alien may continue while the INS' Headquarters Post-order Detention Unit ('HQPDU') determines whether or not a significant likelihood of removal exists. … The HQPDU must then assess the alien's efforts to comply with the removal process as well as a host of other factors, and issue a written decision.

*Rajigah v. Conway*, 268 F. Supp. 2d 159, 164 (E.D.N.Y. 2003) (citing § 241.13(b)(2), (e)(2), (f), (g)).[9] In short, the immigration agency has provided for administratively determining the very question that Petitioner asks this court to resolve.

Neither Petitioner nor the Government cite to 8 C.F.R. § 241.13. Neither side mentions whether Petitioner followed the procedures provided therein or if so, the status of her request. Neither side briefs whether the doctrine of administrative exhaustion applies, and if so whether it is jurisdictional or only prudential. *See, e.g., Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 784 (10th Cir. 2013) ("a party may waive or forfeit the benefit of a nonjurisdictional rule"). It may be that Petitioner and the Government are aware of some good reason to conclude that 8

---

9 "Th[e] determination may be triggered by a written request submitted by the alien to the HQPDU 'asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future....' … The HQPDU then has 10 business days after the receipt of the request to 'respond in writing … acknowledging receipt of the request for a review under this section and explaining the procedures that will be used to evaluate the request.'" *Rajigah*, 268 F. Supp. 2d at 164 (quoting § 241.13(e)(1), (e)(1)).

C.F.R. § 241.13 does not apply to Petitioner,[10] but "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction." *Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 434 (2011). Administrative exhaustion is jurisdictional only when the federal statute in question makes this clear. *See, e.g., McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11,* 488 F.3d 868, 873 (10th Cir. 2007).

The Tenth Circuit does not appear to have addressed whether exhaustion of 8 C.F.R. § 241.13 is required for habeas jurisdiction. But the court has held that "[w]ith regard to immigration laws, exhaustion of remedies is statutorily required only for appeals of final orders of removal." *Hoang v. Comfort*, 282 F.3d 1247, 1254 (10th Cir. 2002) (citing 8 U.S.C. § 1252(d)(1)), *cert. granted and judgment vacated on other grounds sub nom. by Weber v. Phu Chan Hoang,* 538 U.S. 1010 (2003). *See also* 8 U.S.C. § 1252(a)(5) (precluding challenges to removal via habeas); § 1252(a)(2)(D) (otherwise permitting judicial review of constitutional claims). Otherwise, the Tenth Circuit consistently finds that exhaustion is not jurisdictional for habeas petitions challenging detention by the immigration agency. *See, e.g., Soberanes v. Comfort,* 388 F.3d 1305, 1310-11 (10th Cir. 2004) (exhaustion as to motion to reopen was not jurisdictional, but no mention of then-interim rule 8 C.F.R. § 241.13); *Tyson v. Jeffers*, 115 F. App'x 34, 39 (10th Cir. 2004) (exhaustion of INA direct appeal provision was only prudential); *Min-Shey Hung v. United States,* 617 F.2d 201, 203 (10th Cir. 1980) (exhaustion is jurisdictional to challenge removability). *Cf., United States v. Jalilian,* 896 F.2d 447, 448–49 (10th Cir. 1990) (recognizing the Attorney General's primary jurisdiction over removal of aliens). More recently, the U.S. Supreme Court did not require administrative exhaustion for the habeas petitions of aliens found to be enemy combatants. *Boumediene v. Bush*, 553 U.S. 723, 794–95 (2008). The

---

[10] The court has proceeded without the benefit of briefing on this issue, but if either party files objections to this recommendation, they may brief this issue if they wish.

case involved special administrative procedures for review of an alien's continued detention and plainly does not consider exhaustion to be jurisdictional for habeas challenges to detention.[11] This court concludes that exhaustion of 8 C.F.R. § 241.13 is not a jurisdictional prerequisite for the petition in this case.

This leaves the question of whether as a prudential matter the court should decline to hear Petitioner's request. In *Boumediene*, the Court entertained the aliens' petition despite the lack of exhaustion because the detainees had been held for 6 years, had requested the special administrative review, and after two years still awaited the agency's decisions. 553 U.S. at 794-95. No similar facts exist here. The Court also emphasized that its holding did not suggest that district courts should regularly step in to examine the immigration agency's detention decisions while administrative review was still pending. *Id.* at 795. *Boumediene* does not suggest that the court should entertain the petition in this case.

At least twice this court has ruled that exhaustion is not required in the immigration context when it would be futile (*Son Vo v. Greene*, 109 F. Supp. 2d 1281, 1282 (D. Colo. 2000)) or "when 'the interests of the individual in retaining prompt access to a federal judicial forum' outweigh the interests of the agency in protecting its own authority." *Gonzalez-Portillo v. U.S. Attorney Gen., Reno,* No. CIV. A. 00-Z-2080, 2000 WL 33191534, at *4 (D. Colo. Dec. 20, 2000) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).

In similar circumstances, where the record did not reflect whether the alien first exhausted agency review under § 241.13, several courts dismissed the petitions without prejudice as premature. *See, e.g., Royer v. Holder,* 3:12-cv-1319-J-12MCR, 2012 WL 6553114, at *3

---

[11] Four justices would have deferred to the procedures established by the political branches "amidst an ongoing military conflict." *Boumediene,* 553 U.S. at 801 (dissenting opinion of C.J. Roberts, J. Scalia, J. Thomas and J. Alito) ("[T]his decision is not really about the detainees at all, but about control of federal policy regarding enemy combatants.").

(M.D. Fla. Dec. 14, 2012); *Meighan v. Chertoff,* Civ. A. H-08-1222, 2008 WL 1995374, at *3 (S.D. Tex. May 6, 2008); *Saykin v. Holder*, No. Civ. A. 10-10731-RGS, 2010 WL 1839413, at *2 (D. Mass. May 5, 2010) (noting that if alien files another habeas petition, he must allege whether he requested review under § 241.13 and what action the agency took thereon); *Singh v. Gonzales,* Civ. A. H-05-4361, 2006 WL 6584615, at *2 (S.D. Tex. Feb. 17, 2006). *Cf., Philius v. Holder*, No. 1:11 CV 1500, 2011 WL 5509558, at *3 (N.D. Ohio Nov. 10, 2011) (dismissing without prejudice to alien seeking review from HQPDU once the six month presumptively reasonable period expires); *Morena v. Gonzales*, 4:cv 05-895, 2005 WL 3307100, at * 6, n. 10 (M.D. Pa. Oct. 4, 2005) (finding that once the alien's 6 month presumptively reasonable detention period expires, he must exhaust § 241.13 before filing another habeas petition regarding his detention). Several of those cases required the immigration agency to treat the habeas petition as a request for release under § 241.13 and noted that if the alien was unsatisfied with HQPDU's response, they could file a new habeas petition at that time. *See, e.g., Royer,* 2012 WL 6553114, at *2-3, n. 3 (citing *inter alia Gbondo v. Attorney Gen. of the United States,* No. 1:CV–11–1016, 2011 WL 2463051, at *3 (M.D. Pa. June 21, 2011)).

On the other hand, where the existing record conclusively establishes a significant likelihood of removal in the reasonably foreseeable future – *i.e.*, established that exhaustion with § 241.13 would be futile or did not implicate a significant interest of the agency – at least one court denied the petition on the merits. *See, e.g., Hosan v. I.N.S.,* 3:cv 06-482, 2006 WL 2520616, at *4-5 (M.D. Pa. Aug. 29, 2006) (alien made several requests for review of detention under § 241.4 and did not dispute that government had recently obtained travel documents for the alien, the lack of which had been the only impediment to removal).

In this case, the Government asserts that

> ICE has conducted reviews of her custody status. On September 20, 2016, ICE determined that the Applicant would not be released from custody because there was a significant likelihood of removal in the reasonably foreseeable future. On December 12, 2016, ICE determined that the Applicant would not be released from custody, as her removal order was reinstated and her case was pending before the Immigration Judge. On March 7, 2017, ICE inquired of the governments of Honduras, El Salvador, and Guatemala as to whether they would issue travel documents for the Applicant; these countries declined. On April 24, 2017, ICE determined that the Applicant would not be released from custody, as her case is still under review by the BIA.

Cammorto Dec. ¶ 8. Petitioner did not dispute these facts. ICE has thus conducted individualized review of Petitioner's custody three times. However, neither side provides copies of ICE's decisions. Nor does either side indicate whether any of the custody reviews were conducted by HQPDU.

Petitioner attached the March 27, 2017 email that she received from Ms. Cammorto, apparently responding to Petitioner's request that ERO exercise prosecutorial discretion to release her. Doc. 1-4. The email points to a memorandum by Michael J. Garcia "regarding the detention policy where an Immigration Judge has granted Asylum and ICE has appealed, dated February 9, 2004." *Id.* Neither side provided a copy of the 2004 detention policy memorandum. Petitioner in fact does not address that memorandum at all. She therefore appears to concede that the field office of the immigration agency is continuing her detention pursuant to a policy that ICE has applied since at least 2004.

Petitioner thus asks the court either to overturn the immigration agency's long-standing policy or the field office's application thereof to Petitioner as an alien whose "criminal history presents concerns for public safety." Doc. 1-4. Petitioner asks the court to hold a hearing and require the Government to show a significant likelihood of removal in the near future (doc. 17 at 3), but § 241.13 provides that *HQPDU* – not an immigration judge, and not a court – is to (a)

hear and determine that very question (§ 241.13) and (b) conduct further review when it determines there are "special circumstances justifying the alien's continued detention notwithstanding the determination that removal is not significantly likely in the reasonably foreseeable future." 8 C.F.R. § 241.13(e)(6) (referencing review procedures of § 241.14). Special circumstances include aliens who are "a special danger to the public because … [t]he alien has previously committed one or more crimes of violence as defined in 18 U.S.C. 16." § 241.14(f)(1)(i). The immigration judge found that Petitioner committed a "particularly serious crime" under INA § 241(b)(3), doc. 1-1, but the record does not reflect whether the immigration agency has considered whether Petitioner committed a "crime of violence" within the meaning of 18 U.S.C. § 16.

The Government effectively asks the court to find that Petitioner has failed on her burden of proof because the Government might still remove her to a third country. But the Government's efforts to remove Petitioner to a third country have failed to date (Cammorto Dec. ¶ 8), and the likelihood that the agency could identify another country to accept Petitioner is a matter that HQPDU should first consider under § 241.13. The Government also asserts the bases of DHS's now-dismissed appeal to BIA and asks the court to determine – based on that sneak-peek of the merits – that Petitioner was significantly likely to be removed in the foreseeable future. But even when the Government's appeal was pending, the court never had jurisdiction to consider the appeal's merits. The court is likewise not well placed to determine the significance of the proceedings that remain on remand, in terms of the likelihood of Petitioner's removal in the foreseeable future.

Thus, the court concludes that as a prudential matter, the court should decline to rule on the petition as premature. The record is insufficiently developed, and "[t]he administrative

review process [in § 241.13] contemplates the preparation of a record." *Royer*, 2012 WL 6553114, at *2. If the court were to hold an evidentiary hearing, it would impermissibly allow Petitioner to bypass the special, centralized review procedures that the immigration agency promulgated in response to *Zadvydas*. Petitioner has not shown circumstances (such as futility, or the facts shown in *Boumediene)* to justify such a bypass. The agency has an interest in maintaining uniform, consistent detention policies under §§ 241.13 and 241.14. Moreover, the recent dismissal and remand of the agency's appeal may materially change the agency's review of Petitioner's detention.

In short, the court concludes that as a prudential matter, dismissal without prejudice is warranted for the second cause of action.

**CONCLUSION**

For the foregoing reasons, the court RECOMMENDS denying Petitioner's first cause of action for failure to state a claim. The court FURTHER RECOMMENDS dismissing Petitioner's second cause of action without prejudice as premature and closing the case. Finally, the court RECOMMENDS requiring the Respondents to treat the petition as a request for HQPDU review under 8 C.F.R. § 241.13, and providing that if Petitioner is unsatisfied with HQPDU's response, or if she can show that HQPDU's response is unduly delayed, she may file a new habeas petition.

DATED: July 20, 2017.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge